IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRY L. JACKSON,

                    OPINION AND ORDER

        Plaintiff,

                    17-cv-530-bbc

  v.

BRIAN FOSTER, HSU MANAGER STADTMUELLER,
HSU MANAGER MARKUS, GWENDOLYN A. VICK,
AMY GUNDERSON and N. KAMPHUIS,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Terry L. Jackson is proceeding on claims that medical and non-medical staff at Waupun Correctional Institution violated the Eighth and Fourteenth Amendments by denying him appropriate footwear for his plantar fasciitis. Before the court are the parties' cross motions for summary judgment. Dkt. ##34, 42. I am granting defendants' motion and denying plaintiff's because no reasonable jury could conclude that any defendant was deliberately indifferent to plaintiff's foot condition or denied plaintiff equal protection under the law.

      From the parties' proposed findings of fact and evidence in the record, I find that the following facts are material and undisputed, unless otherwise noted.

UNDISPUTED FACTS

A. The Parties

Plaintiff Terry L. Jackson is an inmate who was confined at the Waupun Correctional

1

Institution in Waupun, Wisconsin at all times relevant to this case.  Defendants were all employed at Waupun during the relevant time period.  Brian Foster was the warden; Emily Stadtmueller is a registered nurse and acted as the health services manager from February 2016 through September 2016; Nicole Kamphuis was a financial program supervisor and the Americans with Disabilities Act coordinator responsible for processing requests for accommodations from inmates with disabilities; and Sandra Markus, Gwendolyn A. Vick and Amy Gunderson were registered nurses.

### B.  Inmate Shoes at Waupun

Inmates at Waupun are provided state-issued boots or state-issued shoes to wear during their incarceration.  The general rule is that inmates are to wear the state-issued footwear, but there are three exceptions:

> (1) The health services unit can issue inmates medical shoes, which are commonly referred to as the black Velcro shoe.  The black Velcro shoes are issued to inmates who have a medical need that prevents them from wearing the state-issued footwear.  The black Velcro shoes have a softer sole with more flexibility.
>
> (2) Inmates may order up to two pairs of personal shoes from one of the three approved vendor catalogs–Union Supply, Jack L. Marcus or Access–all of which have been screened for compliance with Department of Corrections' security guidelines.
>
> (3) The Special Needs Committee may give an inmate permission to order personal shoes not included in the approved vendor catalogs at a value that exceeds the general property limit of $75.00, if it is deemed medically necessary.

If an inmate or medical provider thinks an inmate needs special shoes because of a medical necessity, the request is evaluated by the Special Needs Committee.  The committee includes one or more staff representatives from the health services unit, a staff representative

from security and a non-security staff representative. Decisions to approve or deny an inmate's request to order from an unapproved vendor are made on a case-by-case basis. The committee representatives review the special needs requests received from inmates and make recommendations based on their role on the committee. For example, the health services unit representative on the committee reviews the inmate's relevant medical records and determines whether the item or action requested is medically necessary.

Before 2016, there was significant confusion among health services staff regarding whether the health services unit could order shoes for inmates directly or could approve inmate requests to order shoes outside of the approved vendor catalogs. In March 2016, the Department of Corrections distributed a document to the Waupun health services unit titled "DAI Inmate Shoe Process," which was intended to clarify the process for handling requests from inmates to order shoes from anyone other than an approved vendor. The process made it clear that inmates should be permitted to order shoes from vendors not on the approved list only when such shoes were medically necessary. However, such requests still had to be approved through the Special Needs Committee.

C. Plaintiff's Diagnosis of Plantar Fasciitis

In 2013, a prison doctor gave plaintiff a diagnosis of flat feet and plantar fasciitis, which is inflammation of the band of tissue that runs across the bottom of the foot. Plantar fasciitis may be aggravated by loose or thin-soled shoes, shoes without enough arch support or shoes without sufficient padding to absorb shock. Plaintiff's plantar fasciitis causes him

3

chronic pain, stiffness and cramping in both feet and makes it difficult for him to walk in the mornings. The prison doctor ordered basic orthotics for plaintif, which helped relieve plaintiff's foot pain for approximately 30 days, but then his pain returned.

In November 2013, plaintiff submitted a health service request, stating that he had used the orthotics for three months and that, although they had helped for the first month, his pain had worsened significantly since then. Plaintiff was subsequently scheduled to be seen by a specialist at the Aljan Company in Madison, Wisconsin.

On February 21, 2014, plaintiff was seen by a pedorthist, James Blackmer, at Aljan Company, who measured plaintiff for custom orthotics. Blackmer noted that plaintiff's feet were "very wide," that he was wearing shoes a size too small for him and that he should wear shoes that were size 12 to 12 1/2, with a width of 4E. Dkt. #47-4 at 50. The pedorthist recommended that plaintiff be permitted to order shoes with a removable insole from an outside vendor, rather than from the Department of Corrections' "standard catalogs," and that plaintiff return to the clinic for fitting of his orthotics after he received "non-state issued" shoes. Id.

When he returned to the prison, plaintiff wrote to the health services unit asking when he would be able to order shoes meeting the pedorthist's specifications. Health services responded that it would purchase shoes for plaintiff meeting the pedorthist's specifications, that plaintiff could purchase additional shoes from the approved vendor catalogs and that there were shoes in the Jack L. Marcus catalog that would satisfy plaintiff's specific needs.

4

Plaintiff wrote letters to the warden complaining that he was not being allowed to order the shoes he needed. On March 28, 2014, defendant Kamphuis responded on behalf of the warden, stating that because of plaintiff's "unique shoe width size" and "foot problems," he could order shoes from unapproved vendor catalogs. Kamphuis instructed plaintiff that any shoes he purchased must meet the specifications set forth in DAI Policy 309.20.30 and the price could not exceed $75.

On June 24, 2014, plaintiff was issued New Balance shoes from the health services unit that were intended to accommodate his custom orthotics. Plaintiff was also permitted to order two pairs of Nike shoes from EastBay, an outside vendor. (It is not clear from the record when plaintiff received these shoes.) Between June 24, 2014 and December 27, 2015, plaintiff did not complain about his shoes or orthotics.

On December 27, 2015, plaintiff wrote defendant Markus, asking that his New Balance shoes be replaced because his current pair "no longer provided foot support" and his feet had begun aching. He stated that he'd had the current pair for nearly two years and that he needed a new pair. On December 30, defendant Vick, a registered nurse, responded that plaintiff had been scheduled to see a nurse in the health services unit. At the time, Vick and Markus were registered nurses but were not on the Special Needs Committee and did not have the authority to order shoes for plaintiff or allow him to order shoes from outside vendors.

On January 16, 2016, plaintiff sent another request asking defendant Markus for a new pair of shoes and stating that his feet were in pain. By this time, the health services unit

had stopped the practice of ordering shoes from outside vendors for prisoners without approval from the Special Needs Committee, unless the inmate needed black Velcro shoes, so plaintiff's request for new shoes was forwarded to the Special Needs Committee for consideration.

On January 19, 2016, plaintiff received a memorandum from the Special Needs Committee, denying his request to replace the New Balance shoes on the ground that there was "no medical indication" to support the request. (None of the named defendants were on the Special Needs Committee that considered plaintiff's request.) The memorandum stated that the prison would provide plaintiff shoes that would accommodate his orthotics, meaning that either plaintiff could use the state-issued shoes or, if those did not work, the health services unit would provide black Velcro shoes.

On January 22, plaintiff wrote to defendant Markus for clarification about the decision of the Special Needs Committee, asking, in particular, whether he would be receiving new shoes. Plaintiff repeated his complaint that his current New Balance shoes were not providing support anymore. On January 23, health services unit staff responded that the previous health services manager had "cut off" all special order shoes for inmates because inmates were responsible for ordering their own shoes from approved vendors or using the shoes provided by security. Staff also stated that Markus was not in charge of shoes and that plaintiff should forward his request to the new health services manager, Lori Doehling. Doehling later wrote to plaintiff to say that if his orthotic did not fit into any of the shoes provided in the inmate catalogs, the "stores" would purchase shoes for plaintiff.

6

(It is not clear what Doehling meant by "stores.")

On February 10, 2016, plaintiff wrote to the Special Needs Committee, requesting the Health Services Unit to reconsider its denial of his request to order shoes for him because he needed a size 12 ½ 4E, which was not available in the approved vendor catalogs. Plaintiff also wrote to the health services unit about needing new shoes. In response to the health services request, Chrystal Marchant, a nurse, wrote that she had contacted James Blackmer at the Aljan clinic on February 23, 2016 about plaintiff's need for specific shoes. According to Marchant, Blackmer had stated that shoe sizes vary among different brands and that plaintiff's orthotics should fit into a size 12 or 13 shoe. Marchant stated that plaintiff was not allowed to order from an outside vendor but could order shoes from the approved vendor catalogs. The Special Needs Committee also denied plaintiff's request, relying on Marchant's response.

For the next several months, plaintiff continued to send health service requests and other letters to defendants Stadtmueller, Kamphuis, Warden Foster and others regarding his request to order shoes from an outside vendor. Health services staff or another designated representative responded to each of plaintiff's requests by reviewing his medical records and then concluding that there was no medical reason for plaintiff to order shoes from an outside vendor.

In one letter to defendant Kamphuis, dated March 4, 2016, plaintiff wrote that a relative of his, and other "European" inmates had been allowed to order from outside the approved vendor catalogs. Kamphuis responded and told plaintiff that she was not sure

7

which other inmates had been allowed to order from vendors outside the approved vendor catalogs, but that she had not approved anyone to order from any source other than the approved vendor catalogs. Kamphuis also told plaintiff that if his orthotic did not fit inside the standard state issued shoe, he should contact the health services unit to discuss which shoes would work better.

According to plaintiff, he tried to fit his orthotics into a size 12 shoe that he ordered from the approved vendor catalogs and the shoe did not fit him well. (He does not say which shoe he tried or the width of the shoe.) According to defendants, there are several shoes available in the approved vendor catalogs that are size 12 or 13 and 4E and would accommodate plaintiff's orthotics.

OPINION

Plaintiff is proceeding on claims that (1) defendants violated his rights under the Eighth Amendment by rejecting his requests to order appropriately-sized shoes from an outside vendor; and (2) defendants violated his rights under the Fourteenth Amendment by allowing other similarly situated non-black prisoners to order shoes from an outside vendor. I will consider each claim in turn.

A. Eighth Amendment

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to insure that inmates receive adequate medical

8

care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment.  Id. at 828; Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  To survive summary judgment, plaintiff must present evidence suggesting that he suffered from an objectively serious medical condition and that the defendants knew about the condition but disregarded it.  Farmer, 511 U.S. at 834; Perez v. Fenoglio, 792 F.3d 768, 777 (7th Cir. 2015).  For purposes of summary judgment, defendants concede that plaintiff's plantar fasciitis is an objectively serious medical condition.  The sole issue at summary judgment is whether a reasonable jury could conclude that defendants knew about plaintiff's plantar fasciitis but did not properly treat it.

Plaintiff contends that defendants showed deliberate indifference to his plantar fasciitis by failing to insure that he had shoes that were size 12 1/2 4E with removable insoles that would accommodate his custom orthotics.  Plaintiff says that defendants were obligated under the Eighth Amendment to either order special shoes for him or permit him to order shoes from a unapproved outside vendor.  Because plaintiff focuses solely on defendants' denial of his requests for special shoes, I will do the same.

To prove that defendants' denial of his request for a special shoe amounted to deliberate indifference, plaintiff must show that defendants knowingly disregarded "an excessive risk to [his] health or safety.'" Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) (quoting Farmer, 511 U.S. at 837).  Plaintiff has not made this showing with respect to any of the defendants.

Defendants Markus, Vick and Gunderson were registered nurses who received and processed several health service requests that plaintiff filed regarding shoes. However, the undisputed evidence shows that these defendants had no authority to order shoes for plaintiff or to grant him a medical restriction that would have permitted him to order shoes from a non-approved outside vendor. During the time period in which Markus, Vick and Gunderson reviewed and processed plaintiff's health service requests, only the Special Needs Committee had the authority to approve special shoe orders. None of these defendants were on the Special Needs Committee. Thus, on each occasion that Markus, Vick or Gunderson received correspondence from plaintiff, they forwarded his requests to the Special Needs Committee, to the acting health services manager who could make recommendations to the committee, or to Crystal Marchant, who was the nurse designated to review such requests. No reasonable jury could conclude that Markus, Vick or Gunderson acted with deliberate indifference by forwarding plaintiff's requests to prison officials who were in the position to act on the request or provide more information to plaintiff. E.g., Burkes v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) ("[P]ulbic employees are responsible for their own misdeeds but not for anyone else's."); Dixon v. Godinez, 114 F.3d 640, 645 (7th Cir. 1997) ("[O]fficials do not act with 'deliberate indifference' if they are helpless to correct the protested conditions.").

For the same reasons, plaintiff cannot succeed on his additional claim that defendant Warden Foster failed to insure that plaintiff received the shoes he needed to treat his plantar fasciitis. Foster had general supervisory authority over the entire prison, but he did not

10

supervise the day-to-day operations of individual employees at the prison, had no medical training and did not make decisions regarding whether inmates should be permitted to order shoes from unapproved vendor catalogs. Although plaintiff wrote to Foster about his desire to order shoes from an unapproved vendor, Foster was entitled to rely on the conclusions of health services staff and the Special Needs Committee that plaintiff had no medical need for special shoes. Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 676 (7th Cir. 2012) (non-medical staff generally entitled to rely on judgment of medical professionals treating inmate); Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (same).

This leaves plaintiff's claim against defendants Stadtmueller and Kamphuis, both of whom were in a position to recommended to the Special Needs Committee that plaintiff be permitted to order shoes from an unapproved vendor. Plaintiff argues that Stadtmueller and Kamphuis acted with deliberate indifference by disregarding the recommendation from the pedorthist, James Blackmer, that plaintiff needed shoes in size 12 to 12 1/2, with a width of 4E and removable insoles, and that he should be permitted to order shoes from unapproved vendor catalogs. Plaintiff is correct that, under some circumstances, "[a] jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist." Wilson v. Adams, 901 F.3d 816, 822 (7th Cir. 2018) (citation omitted). And "[f]ailing to provide care for a non-medical reason, when that care was recommended by a medical specialist, can constitute deliberate indifference." Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018). But this does not mean that prison officials must "always" follow a recommendation from a specialist. Wilson, 901 F.3d at 822.

11

In this instance, Stadtmueller and Kamphuis accepted Blackmer's opinion that plaintiff needed a larger shoe in a size 12 to 12 1/2, 4E, and with a removable insole. They did not accept Blackmer's recommendation that plaintiff should be permitted to "obtain shoes from an outside vendor" and "not from [the] standard catalogs." But defendants' refusal to accept all of Blackmer's recommendations does not amount to deliberate indifference because Stadtmueller and Kamphuis had reasonable grounds for declining to allow plaintiff to order shoes from an outside vendor.

Blackmer's recommendation gives no reason why the shoes in the DOC-approved vendor catalogs would not accommodate plaintiff's orthotics or why a different shoe was medically necessary to treat plaintiff's plantar fasciitis. He merely stated that plaintiff was wearing shoes that were too small. Without more explanation from Blackmer, it was reasonable for defendants to conclude that Blackmer's recommendation was that plaintiff needed a shoe in the appropriate size, with removable insoles, that would accommodate his orthotics. Stadtmueller and Kamphuis concluded that the approved vendor catalogs carried shoes that satisfied the size and insole requirements that plaintiff needed. See, e.g., Lloyd v. Moats, 721 F. App'x 490, 495 (7th Cir. 2017) ("The fact that [prison doctor] disagreed with the podiatrist's recommendation for special shoes is not material here because the shoes were not prescribed, only recommended pending 'prison medical department' approval.").

Plaintiff contends that the approved vendor catalogs did not offer shoes that satisfied his needs, but he has submitted no evidence to support his contention. He states that he ordered one pair of size 12 shoes that did not accommodate his custom orthotics, but he

12

provides no details about the type of shoe he ordered or whether he ordered the appropriate width. He also does not say whether he ever sought assistance from health services in finding shoes from the vendor catalogs that would accommodate his orthotics. In contrast, defendants submitted a copy of the Jack L. Marcus catalog showing several shoes available in size 12 or 13 with a width of 4E, some of which have removable insoles. Dkt. #47-2. Plaintiff has not submitted evidence to contradict defendants' conclusion that at least one of these shoe choices would have both accommodated his orthotics and met the size requirements set by Blackmer.

Additionally, defendant Stadtmueller reviewed plaintiff's medical records and saw that Nurse Crystal Marchant had conferred with the Aljan Clinic and confirmed that plaintiff did not need a specific type of shoe and that he should be able to fit his orthotics into a shoe size 12 or 13, depending on the shoe brand. Plaintiff objects to defendants' reliance on Marchant's notes regarding her conversation with Blackmer, arguing that the notes and Blackmer's alleged statements are inadmissible hearsay. However, even if Marchant's notes would be inadmissible to prove that plaintiff did not need a particular type of shoe, the notes are admissible to show the effect that they had on Stadtmueller. United States v. Inglese, 282 F.3d 528, 538 (7th Cir. 2002) (statement is not hearsay if it is offered to show effect it had on listener). After reviewing Marchant's notes, Stadtmueller concluded that Blackmer had clarified his recommendation and had assured nursing staff that plaintiff could wear any size 12 or 13 shoe so long as the shoe accommodated his orthotics. No reasonable jury could conclude that Stadtmueller acted with deliberate indifference by

13

relying on a note written by health services staff in plaintiff's medical records.  Further, no reasonable jury could conclude that Kamphuis, who was not a medical provider, acted with deliberate indifference by deferring to the conclusions and recommendations of Stadtmueller and the health services unit.

In sum, there is no basis to conclude that any defendant acted with deliberate indifference in his or her treatment of plaintiff's foot condition in declining to order or allow him to order shoes from a unapproved DOC-approved vendor catalogs.  Accordingly, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

### B.  Equal Protection

Plaintiff was also permitted leave to proceed on a claim that his requests to order shoes from an outside vendor were denied because he is black, in violation of his right to equal protection.  To succeed on a discrimination claim under the equal protection clause, plaintiff must prove (1) "that he is a member of a protected class"; (2) "that he is otherwise similarly situated to members of the unprotected class"; and (3) "that he was treated differently from members of the unprotected class."  Brown v Budz, 398 F.3d 904, 916 (7th Cir. 2005) (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).  Plaintiff must also plead sufficient facts to show that defendants "adopted and implemented a policy not for a neutral . . . reason but for the purpose of discriminating on account of race, religion, or national origin."  Ashcroft v. Iqbal, 556 U.S. 662, 676-77

(2009). In other words, plaintiff must prove an improper motive, and not merely a discriminatory impact. Washington v. Davis, 426 U.S. 229, 245 (1976).

Although plaintiff is a member of a protected class, he has not shown that he was treated differently from prisoners who are not black. He identifies two inmates, Jose Soto and Dustin Eron, whom he says were permitted to order shoes from unapproved vendor catalogs. However, plaintiff has not submitted any evidence showing that these inmates have the same medical condition that plaintiff has, that a specialist made recommendations for Soto and Eron similar to those written by Blackmer relating to plaintiff or that any of the named defendants were involved in giving permission to inmates Soto and Eron to order special shoes. Plaintiff provides no specific evidence relating to Eron at all. With respect to Soto, the evidence shows that he is permitted to order shoes from unapproved vendor catalog only because of a settlement agreement that he reached with the Department of Corrections in 2013. Therefore, Soto is not similarly situated to plaintiff.

In sum, plaintiff has submitted no evidence from which a reasonable jury could conclude that any of the defendants discriminated against him because of his race. Accordingly, defendants are entitled to summary judgment on plaintiff's equal protection claim.

ORDER

IT IS ORDERED that

1. Plaintiff Terry L. Jackson's motion for summary judgment, dkt. #34, is DENIED.

2. Defendants' motion for summary judgment, dkt. #42, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 11th day of March, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge